**ROSCO, INC., Plaintiff,**

v.

**MIRROR LITE COMPANY, Defendant.**

**No. CV–96–5658 (CPS).**

United States District Court, E.D. New York.

Jan. 31, 2001.

---

Ostrolenk Faber Gerb & Soffen, LLP, New York City, for plaintiff.

Plunkett & Cooney, P.C., Bloomfield Hills, MI, Thomas M. Furth, New York City, for defendant.

## MEMORANDUM DECISION AND ORDER

SIFTON, Senior District Judge.

This is an action brought by plaintiff, Rosco, Inc. ("Rosco"), against defendant Mirror Lite Company ("Mirror Lite"), asserting claims of design patent infringement, trade dress infringement, false designation of origin, false description, tortious interference with business relations, and trademark infringement in violation of 15 U.S.C. § 1125(a), as well as a claim of patent invalidity. In addition to damages, plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Mirror Lite has asserted a counterclaim of patent infringement in violation of 15 U.S.C. § 1125(a). The matter was tried before the undersigned sitting without a jury on March 6 through 10, 2000.

For the reasons set forth below, I conclude that Rosco is not entitled to judgment on its claims of design patent in-

fringement, trade dress infringement, false designation of origin, false description, tortious interference with business relations, and trademark infringement. The Mirror Lite patent at issue in this lawsuit is invalid and Mirror Lite is not entitled to judgment on its claim of patent infringement.

What follows sets forth the Court's findings of fact and conclusions of law on which that decision is based as required by Rule 52(a) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff Rosco is a corporation located in Jamaica, New York that manufactures and sells a variety of mirrors and sunvisors for, among other motor vehicles, school buses. Solomon Englander purchased Rosco in 1961. Currently, the company is owned jointly by Benjamin Englander, Rosco's vice president of engineering, Daniel Englander, Rosco's vice president of finance, Gertrude Englander, and Solomon Englander, Rosco's president. (Tr. at 5, 479, Pl.'s Ex. 47.)[1] Defendant Mirror Lite is a corporation located in Rockwood, Michigan, that also manufactures various types of mirrors for school buses, among other motor vehicles. William Schmidt is the owner and president of Mirror Lite. (Tr. at 376, Def.'s Exs. D–P.)

The products in dispute in this lawsuit are "cross-view" mirrors for the school bus industry. These mirrors are convex, three-dimensional, curved surface mirrors that are generally mounted on the front fender of a school bus. So mounted, the mirrors allow the bus driver to view the front and "passenger" side of a school bus. In 1990, Mirror Lite developed and sold a cross-view mirror named the "Bus Boy."[2]

1. Citations to "Tr." refer to the transcript of the March 6–10, 2000 trial. Citations to "Ex." refer to exhibits received into evidence at trial.

2. The Bus Boy mirror is a semi-circular cross-view mirror with a flat top.

Shortly afterward, Rosco developed and sold a cross-view mirror named the "Tiger Eye." In the fall of 1991, Rosco and Mirror Lite settled a litigation involving the competing "Bus Boy" and "Tiger Eye" mirrors, as a result of which Rosco agreed to stop making the "Tiger Eye" mirror. In addition to this lawsuit, there is currently another patent infringement lawsuit between the parties pending in the Eastern District of Michigan.

### The Rosco Mirror

Following Rosco's decision to stop producing the "Tiger Eye" cross-view mirror in the late fall of 1991, Solomon Englander began to design a new cross-view mirror. After Solomon Englander came up with a design for an oval cross-view mirror, he worked with Benjamin Englander to produce a three-dimensional, computer-generated image of the mirror as a basis for producing a prototype. According to the Englanders, the unique aspect of the new design was its oval shape. On December 23, 1991, Rosco sent a fax of the computer-generated image of the oval cross-view mirror to Mir–Acryl, a company that manufactures acrylic mirror products, so as to obtain a lens for a prototype mirror. Rosco thereafter corresponded with Mir–Acryl several times in January and February 1992 on the same subject.

Rosco sought a design patent for its newly designed cross-view mirror on April 14, 1992, and began manufacturing the new mirrors under the name "Eagle Eye" in May 1992. The new cross-view mirror was manufactured with two different mounting systems: product number 2360, consisting of the oval cross-view mirror with a tunnel mounting structure, and product number 2365, consisting of the oval cross-view mirror with a ball-stud mounting structure. The tunnel mounting structure uses a long, cylindrical opening on the mount that receives the tubular arm on which the mirror rests. The ball-stud,

or ball-swivel, mounting structure consists of a ball joint with a threading stud at its end that receives the mirror mounting.

In early 1993, after embarking on an aggressive marketing and sales campaign, Rosco decided to seek to trademark the name "Eagle Eye" for its oval cross-view mirror. Rosco was, however, unable to obtain such a trademark because a Taiwanese company was already selling an unspecified automotive product under the "Eagle Eye" trademark. On December 22, 1993, Rosco received a cease and desist letter from Mirror Lite's attorneys, stating that Mirror Lite had a registered trademark for a school bus mirror it sold under the brand name "Eagle" and requesting that Rosco cease the use of the product name "Eagle Eye" in conjunction with its new school bus mirror. As a result of the difficulty it experienced in registering the name "Eagle Eye," Rosco changed the name of its cross-view mirror to "Hawk Eye."

On April 26, 1994, Rosco obtained United States Design Patent No. 346,357 (" '357 Patent") for the Hawk Eye mirror. (Pl.'s Ex. 1.) The '357 Patent protects the Hawk Eye's ornamental design as described in the patent drawings. The patent drawings and physical exhibits of the mirror show a highly convex, curved-surface, three-dimensional, oval mirror with a black, flat, metal backing. Attached to the flat backing are three support ridges and a bracket mount for attaching the mirror to a support arm, representing the tunnel mounting system. Ten visible screws hold the bracket to the flat backing. The support ridges on the back of the mirror provide structural rigidity to the backing. Plaintiff's Trial Exhibit 111 represents the "Hawk Eye" mirror, with the same dimensions as Trial Exhibit 110 but features the ball-stud mounting system.

### The Mirror Lite Mirror

Theresa Martin, the plant manager at Mirror Lite, testified at trial that in November 1991 she had been asked by Frank Hutchinson, an owner of Mirror Lite, to physically assemble a prototype model of an oval elliptical mirror in November 1991. (Tr. at 376, 523–24.) Karen Botkin, Mirror Lite's vice president, testified that Mirror Lite not only designed but assembled and exhibited the prototype of the oval elliptical mirror at a trade show in November 1991 in Nashville, Tennessee before plaintiff had obtained its prototype. Mirror Lite's prototype was not, however, produced at trial because Botkin testified that, at the end of the trade show, she gave the prototype away. Botkin also testified that Mirror Lite produced six or seven prototypes of an oval elliptical mirror and displayed at least one of them at another trade show sometime in early 1992. No explanation was forthcoming at trial concerning what happened to the "six or seven" Mirror Lite prototypes that were not given away.

Schmidt testified that sometime in August 1992 he saw the advertisement for Rosco's "Eagle Eye" mirror in the August/September issue of a trade publication covering the school bus industry. Schmidt testified that, appearance to the contrary, he took the Rosco mirror to be circular in shape, not oval. Other than seeing the Rosco "Eagle Eye" ad in August 1992, Schmidt testified that he was unaware of the Rosco mirror during any point in the development and production of Mirror Lite's oval cross-view mirror. On September 9, 1992, Mirror Lite filed for a utility patent for its oval cross-view mirror.

The United States Patent Office issued United States Patent No. 5,589,984 (" '984 Patent") on December 31, 1996. (Pl.'s Ex. 2.) The patent drawings and physical exhibits show an oval elliptical mirror with a generally convex reflective surface secured by a rubber gasket. The mirror features a black rubber gasket connected by a "splice joint," a manner of connecting two ends of the gasket that results in a slight extrusion on the gasket. The mirror has a flat, black, plastic backing that features two oval protrusions and a mounting system similar to the Rosco ball-stud mounting system. Schmidt testified that he added the two protrusions as a way of distinguishing the Mirror Lite mirror. After obtaining the '984 Patent, Mirror Lite began selling the oval mirror to school bus manufacturers. To date, Mirror Lite has sold only 400 units of its oval cross-view mirror.

### Marketplace Competition

Sometime in November 1996, Benjamin Englander first observed the Mirror Lite oval cross-view mirror at a trade show in Nashville, Tennessee. On November 25, 1996, Mirror Lite issued a brochure entitled "Mirror Lite Co.1996 Interchange List" ("Interchange"), which described patents generally and explained that Mirror Lite holds thirty patents. (Pl.'s Ex. 52.) The Interchange stated that "[u]nfortunately Mirror Lite will be forced to vigorously enforce their patents in the coming months" because it "will not allow anyone to manufacture, sell, or buy a copy of one of [its] products." (Id.) The remainder of the Interchange is a two-column list of products, one labeled "Genuine Mirror Lite Products" and the other column labeled "Generic" in a circle with a line through it. (Id.) The Generic column includes Rosco's Hawk Eye mirrors, listed under Rosco product numbers 2360 and 2365, respectively. (Id.) The corresponding "Genuine Mirror Lite" mirrors are listed under product numbers 51–2360 and 51–2365, respectively. (Id.)

Sometime in late 1996, Mirror Lite distributed to industry groups a document named a "News Advisory" or "Bulletin,"

which received coverage in the January 1997 issue of *School Bus Fleet.* (Pl.'s Exs. 74–76.) The bulletin stated that, unless a school bus owner replaces a mirror with a mirror of identical appearance and performance, the "school bus manufacturer's [safety] certification no longer applies." The bulletin further states that "[o]nly exact model replacement mirrors will maintain [Federal Motor Vehicle Safety Standard] ("FMVSS") 111 Federal Compliance." (*Id.*) A separate bulletin by Mirror Lite stated that some cross-over mirrors were being installed improperly so that they reflect the school bus' flashing lights, making it harder for the bus driver to see crossing school children. (Pl.'s Ex. 78.) On January 2, 1997, Rosco sent a letter to its customers which stated that Rosco's oval cross-view mirror—the "Mini Hawk Eye"—was in compliance with FMVSS 111. (Pl.'s Ex. 79.)

### Procedural History of the Lawsuit

On November 19, 1996, Rosco filed a complaint alleging five counts of patent and trade dress infringement and violations of related laws. Rosco amended the complaint on December 27, 1996. Each count of the amended complaint is described below.

Count One alleges that defendant began manufacturing and selling a duplicate of Rosco's Hawk Eye mirror in violation of Rosco's '357 Patent as protected by the Patent Act.[3]

Count Two of the amended complaint alleges that Mirror Lite duplicated Rosco's distinctive trade dress and non-functional design of its Hawk Eye mirrors in violation of 15 U.S.C. § 1125(a).

Count Three alleges that Rosco adopted a distinctive product identification scheme for its Hawk Eye mirrors by giving its

products a numerical designation of 2360 and 2365. The defendant, in adopting product identification numbers of 51–2360 and 51–2365 for its own mirrors, constituted a false designation of origin or false description in violation of 15 U.S.C. § 1125(a).

Count Four of the amended complaint alleges that Mirror Lite obtained a prototype of Rosco's Hawk Eye mirror and prepared a patent application based upon the specifications of the Rosco mirror. Once Mirror Lite had filed the fraudulent patent application, it informed potential customers that Rosco's mirrors infringed upon the Mirror Lite patent and that Mirror Lite would seek to enjoin Rosco from selling the mirrors. Rosco alleges that such conduct constitutes tortious interference with business relationships in violation of 15 U.S.C. § 1125(a) and New York law.

Count Five alleges that Mirror Lite disseminated a news advisory and bulletins which falsely asserted that only the installation of an identical replacement mirror on a school bus would comply with federal safety standards. Rosco alleges that Mirror Lite's actions constitute misrepresentation in violation of 15 U.S.C. § 1125(a) and New York law.

On February 13, 1997, I denied defendant's motion to dismiss the complaint for lack of personal jurisdiction and defendant's motion to transfer venue.

On December 15, 1998, defendant moved for summary judgment on all claims. On May 26, 1999, I granted defendant's motion in part and denied it in part. Specifically, summary judgment was granted to defendant on Counts Four and Five of the amended complaint and denied as to the

---

**3.** The amended complaint does not specify the section of the Patent Act that was allegedly violated.

first three counts. On August 19, 1999, I denied plaintiff's motion for reconsideration of my decision granting summary judgment to defendant on Count Five of the amended complaint. On January 11, 2000, I granted plaintiff's motion to consolidate the instant action with CV–99–6211, another case involving the same parties concerning the validity of their respective competing patents—namely, the '357 Patent and the '984 Patent.

Count One of the amended complaint in CV–99–6211 alleges that Mirror Lite's '984 Patent is invalid under 35 U.S.C. § 102(a) and (g) based on Rosco's prior inventive activities and Mirror Lite's misrepresentation in the procurement of the '984 Patent. Count Two alleges that Mirror Lite is infringing upon Rosco's common law trademark rights in the name "Eagle Eye" in violation of 15 U.S.C. 1125(a). Specifically, Rosco contends that Mirror Lite, in selling and marketing its mirrors under the name "Eagle Eye," is infringing Rosco's common law trademark rights in the name "Eagle Eye." The amended complaint seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.

On February 7, 2000, Mirror Lite moved to dismiss Count One of the amended complaint in CV–99–6211 and asserted a counterclaim of patent infringement of its own against Rosco, alleging that the '357 Patent infringes the '984 Patent. On February 15, 2000, Rosco moved to dismiss Mirror Lite's counterclaim. On February 24, I granted Mirror Lite's motion to dismiss count one of the amended complaint in CV–99–6211, while granting Rosco leave to replead. I also denied Rosco's motion to dismiss Mirror Lite's counterclaim.

During trial, I allowed Rosco to reinstate its claim of unfair competition in violation of the 15 U.S.C. § 1125(a). On May 12, 2000, Mirror Lite moved to supplement the trial record.

## DISCUSSION

### Design Patent Infringement Claim

Count One of the amended complaint in CV–96–5658 alleges design patent infringement of Rosco's '357 Patent by Mirror Lite's '984 Patent.

A design patent may be issued for a new and ornamental design for an article of manufacture. See 35 U.S.C. § 171. Whether a design patent is infringed, the issue in this case, is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device. See Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed.Cir.1995). "The requirement that the court construe disputed claim language, as applied to design patents, must be adapted to the practice that a patented design is claimed as shown in its drawing. There is usually no description of the design in words." Goodyear Tire & Rubber Company v. Hercules Tire & Rubber Company, Inc., 162 F.3d 1113, 1116 (Fed.Cir.1998); 37 C.F.R. § 1.153(a).

A design patent only protects the novel, ornamental features of the patented design. See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed.Cir.1993); Lee v. Dayton–Hudson Corp., 838 F.2d 1186, 1188 (Fed.Cir. 1988) ("[I]t is the non-functional, design aspects that are pertinent to determinations of infringement.") (footnote omitted). Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent. Lee, 838 F.2d at 1188.

The parties dispute whether the '357 Patent possesses ornamental features. Specifically, Mirror Lite argues that the proper claim construction will show that the '357 Patent possesses primarily functional features and is, therefore, invalid.

Rosco argues that the '357 Patent possesses specific ornamental features and that the overall visual design of the patent is ornamental.

A design patent covers only the appearance of the product. *See Gorham Mfg. Co. v. White*, 81 U.S. at 525, 14 Wall. 511; *In re Harvey*, 12 F.3d 1061, 1064 (Fed.Cir.1993). If a "particular design is essential to the use of the article, it cannot be the subject of a design patent." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d at 1123. A design is essential or functional "when the appearance of the claimed design is 'dictated by' the use or purpose of the article." *Id.* "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id.* Thus a design can embody functional features and still be patentable. *See Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1199 n. 5 (Fed.Cir. 1994).

With respect to Rosco's oval cross-view mirror, inspection of the mirror and of the patent drawings reveals that its design is in fact functional. The mirror's oval shape, the claimed point of novelty in Rosco's '357 Patent,[4] of necessity dictates its function. The field of view it offers is unique to the oval shape, as the oval shape produces angles and images not similarly discernible in convex cross-view mirrors of different shapes. When compared with the Bus Boy mirror, another cross-view mirror, the Rosco mirror provides a more expansive field of view and produces a slightly different distortion of images in the mirror, depending on positioning.

Specifically, the Rosco mirror, when mounted perpendicularly to the ground, allows the viewer to view images from above the mirror that the Bus Boy does not when mounted in the same position. Depending on where the school bus on which the mirror is mounted is operating, for example, in an urban area or in a rural area, the ability to see alongside and above the bus may or may not be important to a customer. In short, the oval design has functional capacities that a Bus Boy style mirror does not. The oval design is sufficiently central to the Rosco mirror's use as to render it functional.

In applying for a patent, Rosco represented to the patent office that its oval cross-view mirror provided a superb field of view by virtue of its shape. Rosco also advertised that its mirror would offer a more thorough field of view due to its oval shape than other cross-view mirrors, such as Mirror Lite's Bus Boy. "Why settle for half a mirror when you can have it all. Our new Eagle Eye mirror gives you the big picture." (Pl.'s Ex. 32.) Rosco also marketed its mirror as more aerodynamic than other cross-view mirrors of different shape. Advertising that highlights features of the product's design as offering a specific utility is a factor that influences the determination of the functionality of a design patent. *See Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed.Cir.1997).

Accordingly, I find the Rosco mirror contemplated by the '357 design patent invalid on the basis of its functionality. Accordingly, Rosco is not entitled to recover on its claim for design patent infringement.[5]

4. (*See* Pl.'s Rep.Br. at 5.)

5. With respect to Mirror Lite's motion to supplement the trial record, the application is moot since it relates to the validity of Rosco's '357 design patent, which is invalid for functionality. Also, Mirror Lite's motion for a pretrial determination of the construction of the claim of the '357 Patent is denied as moot, since the '357 Patent is invalid as obvious. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)

*Trade Dress Infringement Claim*

In Count Two of the amended complaint in CV–96–5658, Rosco asserts infringement of its trade dress [6] rights, in violation of Section 43 of the Lanham Act, codified at 15 U.S.C. § 1125(a).[7] In its post-trial reply memorandum of law, Rosco indicates that it is abandoning its claim of trade dress infringement in light of the Supreme Court's decision in *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339, 1345, 146 L.Ed.2d 182 (2000) ("[I]n an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning."). Rosco does not dispute that secondary meaning has not yet attached to the trade dress of its oval cross-view mirror. Accordingly, Rosco is not entitled to recover on its claim of trade dress infringement.

*False Designation of Origin Claim*

Count Three of the amended complaint in CV–96–5658 alleges that Mirror Lite falsely designated the origin of its mirrors in violation of 15 U.S.C. § 1125(a) when it adopted a product numbering system similar to the numbering used by Rosco. Specifically, Rosco points to the fact that Mirror Lite sold its oval cross-view mirrors with a product numbering system identical to Rosco's, except that Mirror Lite prefixed its product numbers with a "15–." Mirror Lite has since stopped using the disputed product numbering system. However, "in the context of trademark infringement, it has long been the law that harm is caused by the very offer of an infringing work, even if not one single sale is made." *Digital Equipment Corp. v. AltaVista Technology, Inc.*, 960 F.Supp. 456, 472 (D.Mass.1997); *Editorial Musical Latino Americana v. Mar Int'l Records, Inc.*, 829 F.Supp. 62, 64–65 (S.D.N.Y.1993).

To prevail on a claim for false designation of origin, a plaintiff must demonstrate that " 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.' " *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 390 (2d Cir.1995) (quoting *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993)). Section 15 U.S.C. § 1125(a) protects even unregistered trademarks. *See 815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643 (2d Cir.1988). A mark is entitled to protection when it is inherently distinctive; if the mark is "merely descriptive,"

---

**6.** While "trade dress" formerly "referred only to the manner in which a product was 'dressed up' to go to market with a label, packaged, display card, and similar packaging elements," the concept "has taken on a more expansive meaning and includes the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995).

**7.** Section 43 reads in relevant part:

1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

 (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

 (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a).

§ 15 U.S.C. 1052(e), it qualifies for protection only if it has acquired secondary meaning, *i.e.*, if it "has become distinctive of the ... goods in commerce," *id.* § 1052(f). "Secondary meaning attaches when 'the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business.'" *Arrow,* 59 F.3d at 390 (quoting *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 583 (2d Cir.1990)).

 Rosco has failed to establish that secondary meaning has attached to its product numbering system. The factors relevant to the inquiry of secondary meaning (none of which is dispositive) include such matters as advertising expenditures, consumer studies, unsolicited media coverage of the product, sales, competitors' attempts to plagiarize the mark, and the length and exclusivity of the mark's use. *See Centaur Comm., Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1222 (2d Cir.1987); *Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 217 (2d Cir.1985). As the Second Circuit has noted, "[t]he crucial question in a case involving secondary meaning always is whether the public is moved in any degree to buy an article because of its source." *Genesee,* 124 F.3d at 143 n. 4.

 No evidence of advertising expenditures, consumer studies, or unsolicited media coverage was presented at trial. While Rosco did provide some rough figures on the number of sales of its cross-view mirrors, no competitors other than Mirror Lite have attempted to use a similar product numbering system. While Mirror Lite appears to have deliberately copied aspects of Rosco's product numbering system, which is, of course, of some significance, that evidence alone is insufficient to establish secondary meaning. No consumer studies or media reference to the product numbers were introduced at

trial nor much other evidence bearing on secondary meaning. In short, I am unable to conclude that the numbering system has obtained second-class meaning with consumers.

 Even if Rosco had shown that secondary meaning attached, it has not shown that Mirror Lite's use of similar product numbers for its oval cross-view mirrors is likely to cause confusion in the marketplace. To show a likelihood of confusion, Rosco must demonstrate that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Gruner + Jahr,* 991 F.2d at 1077. In this Circuit, courts generally consider the *Polaroid* factors to decide whether a plaintiff has established a likelihood of confusion. *See Arrow,* 59 F.3d at 391 (citing *Polaroid,* 287 F.2d at 495). Those factors include:

(1) the strength of the prior owner's [trademark];

(2) the similarity between the two [trademarks];

(3) the competitive proximity of the products;

(4) the likelihood that the prior user will bridge the gap;

(5) actual confusion;

(6) the defendant's good faith;

(7) the quality of the defendant's product; and

(8) the sophistication of the buyers.

*Polaroid Corp.,* 287 F.2d at 494; *accord Paddington Corp. v. Attiki Importers & Distribs.,* 996 F.2d 577, 584 (2d Cir.1993). This list is not exhaustive. *See Estee Lauder, Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1510 (2d Cir.1997). The evaluation of the Polaroid factors is not a mechanical process "where the party with the greatest

number of factors weighing in its favor wins." *Physicians Formula*, 857 F.2d at 85. Rather, courts focus on the ultimate question of whether consumers are likely to be confused. *See Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 580 (2d Cir.1991).

Rosco's product numbering system can hardly be called a strong trademark; it serves primarily if not exclusively as an identifying number to facilitate the processing of orders rather than as a more traditional trade name or trademark. While the parties' product numbers are similar and the mirrors are in direct competition with each other, no evidence was presented at trial of actual confusion in the marketplace due to the similar product numbering system. Benjamin Englander testified that none of the school bus companies that purchased mirrors noted that their personnel was confused by Mirror Lite's use of a similar numbering system. Moreover, "when a similar mark is used in conjunction with a company name," as is the case here, "the likelihood of confusion may be lessened." *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir.1993) (internal citations omitted), limited on other grounds by *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 46 (2d Cir. 1994).

The evidence produced at trial shows that Mirror Lite only used the similar product numbering system in a catalogue, and none of the Mirror Lite cross-view mirrors introduced at trial displayed the product numbering in dispute. Mirror Lite has ceased use of the similar product numbering system, which itself shows it was of little use in producing confusion, if that was Mirror Lite's intent. Since the mirrors at issue are competing in the same marketplace, the gap between the products has already been bridged. *See Paddington*, 996 F.2d at 586.

Finally, while the record does not warrant an inference that Mirror Lite used a similar product numbering system for its high-quality, oval cross-view mirrors as that of Rosco in bad faith, there is little likelihood of confusion, given the sophistication of the purchasers in the school bus mirror market. According to Benjamin Englander, individuals who purchase the school bus mirrors at issue know the source of their product. The more sophisticated the consumers of a product are, " 'the less likely it is that similarities in trade dress or trade marks will result in confusion concerning the source or sponsorship of the product.' " *Paddington*, 996 F.2d at 587 (quoting *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir.1992)). According to Englander, Rosco's customers generally did not say they wanted a particular model name of Rosco mirror but, rather, used the Rosco name and the shape of the mirrors for their school buses. Only after ordering the Rosco mirror would the Rosco sales manager fill in the product number. Accordingly, I find that consumers of Rosco mirrors were not and would not be confused by Mirror Lite's use of a similar product numbering system for its oval cross-view mirrors. Therefore, since there is no likelihood of consumer confusion, Rosco is not entitled to recover for a violation of 15 U.S.C. § 1125(a) for false designation of origin.

### Patent Invalidity

Rosco argues that the '984 Patent is invalid under 35 U.S.C. § 102(a), (e), (f), and (g) and that the '984 Patent is invalid for obviousness under 35 U.S.C. § 103.

As an initial matter, Mirror Lite objects to Rosco's attempt to argue the invalidity of the '984 Patent under 35 U.S.C. §§ 102(e), (f), and 103, since those statutes are not referred to in the pleadings. Assuming without deciding that in

patent cases the doctrines of notice pleading do not apply, it is clear that amendment to the pleadings to conform to the proof is appropriate. In assessing whether the pleadings should be amended, the pivotal question is whether prejudice would result. *See New York State Electric and Gas Corporation v. Secretary of Labor*, 88 F.3d 98, 104–5 (2d Cir.1996). A party's failure to plead a theory of recovery must have disadvantaged its opponent in presenting its case. *See id.; see also D. Federico Co. v. New Bedford Redevelopment Auth.*, 723 F.2d 122, 126 (1st Cir. 1983). Nothing of that sort occurred here. Mirror Lite does not dispute that the material fact issues to be tried would have been exactly the same regardless whether or not the statutory provisions at issue were actually pled. *See New York State Electric*, 88 F.3d at 105; *see also Spancrete Northeast, Inc. v. OSHRC*, 905 F.2d 589, 593 (2d Cir.1990). Mirror Lite had ample opportunity to and did develop both the evidence and the legal argument necessary to confront plaintiff's case. Accordingly, Rosco's complaint is deemed amended to add claims of patent invalidity under 35 U.S.C. §§ 102(e), (f), and 103.

■ A United States patent, once issued, is presumed to be valid. *See* 35 U.S.C. § 282. The party challenging the validity of the patent bears the burden of proving invalidity by clear and convincing evidence. *See Monarch Knitting Machinery Corp. v. Sulzer Morat Gmbh*, 139 F.3d 877, 881 (Fed.Cir.1998). The clear and convincing standard of proof is "an intermediate standard which lies between 'beyond a reasonable doubt' and a 'preponderance of the evidence.'" *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed.Cir.1988) (internal citations omitted).

■ *35 U.S.C. § 102(e).* An individual is entitled to a patent unless "the invention was described in a patent granted on an application for patent by another

filed in the United States before the invention thereof by the application for patent." 35 U.S.C. § 102(e). "Invalidity for anticipation requires that all of the elements and limitations of the claim are found within a single prior art reference." *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed.Cir. 1991) ("There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention"); *see also Hazani v. U.S. Intern. Trade Com'n*, 126 F.3d 1473, 1477 (Fed. Cir.1997). "To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *In re Schreiber*, 128 F.3d 1473, 1477 (Fed.Cir.1997) (citing *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed.Cir.1995)). The doctrine of inherency provides that, if an element is not expressly part of a prior art claim, the prior art anticipates a subsequent claim containing that element if the element in question is inherent or necessarily present in the prior art. *See Schreiber*, 128 F.3d at 1477; *Glaxo*, 52 F.3d at 1047. In other words, if the '357 Patent inherently discloses the invention of the '984 Patent so that one skilled in the art could produce the results claimed in the '984 Patent simply by practicing the '357 Patent, *i.e.*, the result flows naturally from the express disclosures of the '357 Patent whether or not others are aware of it, then invalidity for anticipation exists. *See Verdegaal Bros. v. Union Oil*, 814 F.2d 628, 633 (Fed.Cir.1987).

■ Rosco argues that the '357 Patent anticipates Claims 1–3 and 6–8 of Mirror Lite's '984 Patent, thereby rendering Mirror Lite's claim to have invented an oval, ellipsoid, cross-view mirror invalid. Mirror Lite's only response to this argument is its contention that the '357 Patent can-

not anticipate the claims of the '984 Patent because the '357 Patent drawings do not show a mirror with a varying radius of curvature. Otherwise, it is undisputed that the mirrors described in the two patents are similar.

At trial, both parties produced witnesses to testify to whether the '357 Patent drawings show a mirror with a constant or with a varying radius of curvature. Rosco's expert witness, Harvey F. Manbeck, Jr.[8], the former Commissioner of the Patent and Trademark Office of the United States, testified that, based on his assessment of the '357 Patent drawings, the patent shows a mirror with a varying radius of curvature and that the '357 Patent invalidates Claims 1–3 and 6–8 of the '984 Patent.[9] (Tr. at 167 & 199–200.) Mirror Lite produced Daniel Swain, its vice president of sales, to testify, using a compass and protractor, that the '357 Patent drawings show a mirror with a constant radius of curvature on the minor axis of the mirror and a varying radius of curvature of the major axis. (Tr. at 571 & 590.)

However, the issue of anticipation cannot be resolved based simply on "eyeballing" the drawings, with or without a compass and protractor. Indeed, an examination of the drawings in both of the two patents reveals oval mirrors that are virtually indistinguishable in shape, with similar radii of curvature along the lens. What dictates a finding of anticipation is that anyone practicing the '357 Patent by attempting to manufacture it would, on the uncontradicted evidence at trial, come up with a mirror with a varying radius of curvature. In short, the '357 Patent shows a mirror with a varying radius of curvature based on the inherent nature of such a characteristic. While Benjamin Englander testified that Rosco would have preferred to have a mirror that had a constant rate of curvature, which would not distort the images in the mirror less than would a mirror with a varying radius of curvature, the vacuum thermoform-

---

**8.** Mirror Lite's motion to exclude Manbeck's testimony, if it has not been abandoned, is denied. In its post-trial memoranda of law, Mirror Lite uses portions of Manbeck's testimony to support its claim that the '984 Patent is not invalid under 35 U.S.C. § 102(a). (*See* Def.'s Post–Trial Reply Br. at 1–2.)

**9.** Claims 1–3 and 6–8 of the '984 Patent are as follows:

1. A mirror assembly, comprising:
(a) a mirror lens having a reflective surface and a non-reflective rear surface, the mirror lens comprising a mirror body which terminates in an oval perimetral edge, the edge surrounds the reflective surface and the non-reflective surface of the mirror lens, the mirror body being a substantially convex ellipsoid having a major axis and a minor axis which intersects with the major axis, the major axis having a varying radius of curvature, which radius decreases from the intersection with the minor axis to the perimetral edge.
2. The assembly of claim 1 which further comprises:

(a) means for supporting the mirror lens; and
(b) means for mounting the mirror lens to a mounting surface.
3. The mirror assembly of claim 2 wherein the means for supporting the mirror comprises:
(a) a mounting frame, the mounting frame abutting against the edge of the non-reflective surface of the lens, the mounting frame having at least one hole formed therein for receiving a fastener for the means for mounting the mirror assembly, and
(b) a gasket, the gasket securing the mirror lens to the mounting frame. . . .
6. The mirror assembly of claim 2 wherein: the means for mounting comprises means for mounting the assembly to the exterior of a vehicle.
7. The mirror assembly of claim 1 wherein the minor axis has a varying radius of curvature.
8. The mirror assembly of claim 7 wherein the minor axis has its minimum radius of curvature at the perimetral edge.
(Pl.'s Ex. 2.)

ing process used to manufacture such mirrors of necessity yields a mirror with a varying radius of curvature.[10] (Tr. at 49.) This evidence was not contradicted at trial.

Indeed, all cross-view mirrors produced before Rosco manufactured its oval cross-view mirror, *i.e.*, the prior art, introduced into evidence at trial have lenses with a varying radius of curvature.

Moreover, the mirror Rosco produced in August 1992 has a varying radius of curvature across the mirror lens, indicating that Rosco intended to market an oval cross-view mirror with a varying radius of curvature prior to the filing of Mirror Lite's patent application.

*35 U.S.C. § 102(g).* In all events, the '984 Patent is invalid under 35 U.S.C. § 102(q) because the mirror claimed in it had been previously invented by another, both in conception and reduction to practice.[11] Mirror Lite claims that it conceived and reduced to practice its oval cross-view mirror in November 1991, months before Rosco.

■■■ Generally, the first person to reduce an invention to practice has priority as the inventor unless another person shows that he or she first conceived the invention and exercised reasonable diligence to achieve actual or constructive reduction to practice. *See Hyatt v. Boone,* 146 F.3d 1348, 1351 (Fed.Cir.1998) (citations omitted). "Priority is a question of law which is to be determined based on underlying factual determinations." *Price v. Symsek,* 988 F.2d 1187, 1190 (Fed.Cir. 1993). Thus, the focus is on: (1) the dates of conception for the two inventions; (2) the dates of reduction to practice for each; and (3) if Mirror Lite was first to conceive, whether Mirror Lite exercised reasonable diligence to achieve reduction to practice.

■■■ As Rosco was the first to file a patent application, the '357 Patent invention was constructively reduced to practice first. *See Cooper,* 154 F.3d at 1327 (constructive reduction to practice occurs when the patent application is filed). Consequently, Rosco is presumed to be the prior inventor. *See Hyatt,* 146 F.3d at 1351. In all events, Rosco both conceived and practiced its invention before the '984 Patent application was filed or the invention claimed by that application was conceived or practiced. *See Thomson, S.A. v. Quixote Corp.,* 166 F.3d 1172, 1175 (Fed.Cir. 1999) (citing *Price v. Symsek,* 988 F.2d 1187, 1194–95 (Fed.Cir.1993)).

■■■ "Priority, conception, and reduction to practice are questions of law which are based on subsidiary factual findings." *Cooper,* 154 F.3d at 1327 (internal citations omitted). Conception requires a showing that the "inventor ... formed in his or her mind 'a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Mahurkar,* 79 F.3d at 1577 (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.,* 40 F.3d 1223, 1228 (Fed.Cir.

---

**10.** In its post-trial reply memorandum of law, Mirror Lite contends that the Rosco mirror could have manufactured using an injection molding process to produce a constant radius of curvature. No evidence to his effect was, however, presented at trial.

**11.** 35 U.S.C. § 102(g) states that a person shall be entitled to a patent unless:

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to practice, from a time prior to conception by the other.

1994)); *accord Cooper,* 154 F.3d at 1327. This idea "must be 'so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research and experimentation.'" *Mahurkar,* 79 F.3d at 1577 (quoting *Burroughs Wellcome Co.,* 40 F.3d at 1228).

■ Moreover, "where a party seeks to show conception through the oral testimony of an inventor," the party must produce independent evidence corroborating that testimony. *Id.* Such corroborating evidence is analyzed under a "rule of reason"; in other words, "[a]n evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." *Id.* (quoting *Price,* 988 F.2d at 1195). Schmidt's testimony that he conceived of its oval cross-view mirror in November 1991 is open to serious doubt. In all events, that testimony must be corroborated by independent evidence.

The independent evidence proffered by Mirror Lite is the testimony of Botkin and Martin, both Mirror Lite employees, who testified to the existence of prototypes of an oval cross-view mirror, one of which they claimed was displayed at a trade show in November 1991. Mirror Lite did not, however, produce any prototype, documents, drawings, sketches, or photographs to corroborate the testimony of Botkin and Martin. In cases where there is no physical evidence at all, the testimony of friends and interested parties is insufficient to support a determination that the invention of the '984 Patent was conceived and prac-

ticed prior to the conception and practice of the device by the competitor. *See Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1373 (Fed.Cir.1998); *Hay & Forage Industries v. New Holland North America, Inc.,* 60 F.Supp.2d 1099, 1126 (D.Kan.1998). Since Mirror Lite cannot establish a conception or practice date earlier than September 9, 1992, Rosco conceived and reduced to practice its oval cross-view mirror first.[12]

For the reasons set forth above, the '984 Patent is declared invalid.[13] For the same reasons, Mirror Lite's motion to dismiss Rosco's claim of patent invalidity is denied.

*Trademark Infringement*

Count Two of the amended complaint in CV–99–6211 alleges that Mirror Lite is infringing upon Rosco's common law trademark rights in the terms "Eagle Eye" and "Hawk Eye" by marketing and selling the oval mirror in question in this lawsuit under the name "Eagle Eye." However, in its post-trial briefs, Rosco has abandoned its claim that its trademark rights in the mark "Eagle Eye" were infringed by Mirror Lite. Accordingly, Rosco is not entitled to judgment on this claim.

In addition, while asserting a claim of false designation of origin in violation of 15 U.S.C. § 1125(a) based on Mirror Lite's marketing of its oval cross-view mirrors under the names "Eagle Eye" and "Mini Eagle Eye," Rosco has produced no evidence in the form of consumer surveys, advertising expenditure, or unsolicited media coverage that "Hawk Eye" or "Mini Hawk Eye" have obtained secondary

---

**12.** Mirror Lite moves to be relieved of admissions made by Schmidt and Hutchinson in pretrial depositions that there were no prototypes of the invention of the '984 Patent under Rule 36 of the Federal Rules of Civil Procedure. Even relieving defendant of the dispositive force and effect of those admissions, they remain in the case as prior inconsistent state-

ments having a bearing on credibility, further undermining the testimony to the earlier conception and reduction to practice.

**13.** Since the '984 Patent is invalid under 35 U.S.C. § 102(e) and (g), there is no need to consider claims of its invalidity under 35 U.S.C. §§ 102(a), (f), or 103.

meaning. Nor has Rosco established a likelihood of confusion, given the sophistication of the purchasers in the school bus mirror market. Accordingly, Rosco is not entitled to recover on its claim of false designation · of origin in violation of 15 U.S.C. § 1125(a).

Rosco has also attempted to reargue its false designation of origin claim, Count Five of the amended complaint in CV–96–5658, alleging that Mirror Lite issued statements to the school bus industry that only Mirror Lite mirrors comply with federal safety standards, in violation of 15 U.S.C. § 1125(a). This cause of action was dismissed by the Court in its Memorandum and Order of May 26, 1999, on Mirror Lite's motion for summary judgment. On August 19, 1999, the Court refused to reinstate this cause of action in Rosco's motion for reconsideration. Since Rosco has not offered any new evidence at trial not previously available to the Court at the summary judgment phase that would compel the Court to reinstate this cause of action, it will not be considered here for the third time.[14]

### Mirror Lite's Counterclaim of Patent Infringement

Mirror Lite's counterclaim to the amended complaint in CV–99–6211 alleges patent infringement of Mirror Lite's '984 Patent by Rosco's '357 Patent. Mirror Lite argues that it is entitled to declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 [15] for Rosco's wilful infringement of its '984 Patent. However, since, as set forth above, Mirror Lite's '984 Patent is invalid, it cannot have been infringed.

### Rosco's Application for Costs

Rosco has made an application for costs and attorney's fees. Courts have, however, regularly declined to award costs when neither the plaintiff claiming infringement nor the defendant asserting counterclaims for patent invalidity have prevailed. See B. Braun Medical, Inc. v. Abbott Labs., 38 F.Supp.2d 393 (E.D.Pa.1999); Compro-Frink Co. v. Valk Mfg. Co., 595 F.Supp. 302 (E.D.Pa.1982); see also Kalkowski v. Ronco, Inc., 424 F.Supp. 343, 354 (N.D.Ill. 1976).

■ Because the conclusions reached by the Court do not materially alter the legal relationship between Rosco and Mirror Lite by modifying either party's behavior in a way that directly benefits the other party, neither party is a "prevailing party" for purposes of Federal Rule of Civil Procedure 54(d)(1). See Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1182 (Fed.Cir.1996). Accordingly, neither Rosco nor Mirror Lite, for that matter, is

---

**14.** On May 9, 2000, at the conclusion of trial, the Court informed counsel for both parties that the summary judgment opinion of May 26, 1999, did not dispose of Rosco's claim of tortious interference with business relations in violation of 15 U.S.C. § 1125(a), Count Four of the amended complaint in CV–96–5658, and invited the parties to submit briefing on this issue. Rosco has not pursued this cause of action at all in either of its two posttrial briefs. Therefore, the Court must consider that Rosco has abandoned this cause of action.

**15.** 28 U.S.C. § 2201 reads in relevant part:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a).

28 U.S.C. § 2202 reads: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

entitled to recover costs incurred as a result of this litigation.

CONCLUSION

For the reasons set forth above, I conclude that Rosco is not entitled to judgment on its claims of design patent infringement, trade dress infringement, false designation of origin, false description, tortious interference with business relations, and trademark infringement. The Mirror Lite patent at issue in this lawsuit is invalid, and Mirror Lite is not entitled to judgment on its claim of patent infringement.[16]

The plaintiff is directed to settle a judgment on notice to all parties within 30 days of the date of this order.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

16. With respect to Rosco's motions to exclude Mirror Lite's Trial Exhibit DZ and the "Master Index" document from evidence in this case, those motions are denied as moot since the exhibits in question were not entered into evidence at trial.