NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

03-1562

ROSCO, INC.,

Plaintiff-Appellee,

v.

MIRROR LITE COMPANY,

Defendant-Appellant.

_____

DECIDED: January 19, 2005

_____

Before CLEVENGER, RADER, and DYK, Circuit Judges.

DYK, Circuit Judge.

Mirror Lite Company ("Mirror Lite") appeals from the decision of the United States District Court for the Eastern District of New York finding claims 1, 2, 3, 6, 7, and 8 of Mirror Lite's U.S. Patent No. 5,589,984 (the "'984 patent") invalid under 35 U.S.C. § 102(a); finding all claims of the '984 patent unenforceable for inequitable conduct; and awarding attorney's fees.  Rosco, Inc. v. Mirror Lite Co., No. 96-CV-5658 (E.D.N.Y Jul. 9, 2003) ("Rosco III").  We reverse.  We further hold that Rosco, Inc. ("Rosco") did not present sufficient evidence to prove claims 1, 2, 3, 6, 7, and 8 of the '984 patent invalid for obviousness and remand the case for consideration of the issue of infringement on the existing trial record.

BACKGROUND

I

This is the second time this case has come before this court. We previously remanded the case to the district court with instructions for it to address six specific issues on the existing trial record. Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373, 1384 (Fed. Cir. 2002) ("Rosco II"). In particular, we directed the district court to address

> 3) whether Rosco has shown by clear and convincing evidence that Mirror Lite's '984 patent is invalid under 35 U.S.C. §§ 102(a), 102(f), and 103, considering each claim separately;
> 4) whether Rosco has shown by clear and convincing evidence that Mirror Lite's '984 patent is unenforceable due to inequitable conduct; [and]
> 5) whether Mirror Lite has shown by preponderant evidence that Rosco infringed any valid claim of its '984 patent (if those claims are valid and enforceable).

Id. The case is now before us once again on Mirror Lite's appeal of the district court's holdings regarding invalidity, inequitable conduct, and attorney's fees.

II

Mirror Lite owns the '984 patent. Rosco and Mirror Lite are competitors in the school bus mirror market. Rosco brought a claim for declaratory judgment that the '984 patent was invalid and unenforceable; Mirror Lite counterclaimed for infringement of the '984 patent. That patent, issued on December 31, 1996, pertains to an oval elliptical mirror. Claim 1 is the sole independent claim and reads:

> 1. A mirror assembly, comprising:
> (a) [sic] a mirror lens having a reflective outer surface and a non-reflective rear surface, the mirror lens comprising a mirror body which terminates in an oval perimetral edge, the edge surrounds the reflective surface and the non-reflective surface of the mirror lens, the mirror body being a substantially convex ellipsoid having a major axis and a minor axis which intersects with the major axis, the major axis having a varying radius of curvature, which radius decreases from the intersection with the minor axis to the perimetral edge.

'984 patent, col. 4, ll. 21-31 (emphasis added).  Following the remand, and based on the record of the bench trial, the district court found claims 1, 2, 3, 6, 7, and 8 of the patent invalid under section 102(a) and all claims of the patent unenforceable due to Mirror Lite's inequitable conduct.  Rosco III, slip op. at 2, 37, 50.

### III

Rosco argued below that prior to the '984 patent's date of invention,[1] it conceived, reduced to practice, and sold mirrors containing all elements of claims 1, 2, 3, 6, 7, and 8 of the '984 patent, thus rendering the patent invalid under 35 U.S.C § 102(a) because it was known or used by others before the date of invention.  Rosco co-owners Benjamin and Solomon Englander both testified that, prior to the '984 patent's date of invention, they designed a mirror having all elements of claims 1, 2, 3, 6, 7, and 8.  Rosco introduced Trial Exhibit 110 ("Exhibit 110"), a mirror made by Rosco, as corroborating this testimony.  However, Mirror Lite argued that Rosco failed to show (1) that Exhibit 110 had decreasing radii of curvature along its major and minor axes; (2) that Rosco publicly used Exhibit 110 before the priority date of the '984 patent; and (3) that Rosco appreciated that Exhibit 110 had a decreasing radius of curvature.

The district court rejected all of Mirror Lite's arguments regarding the insufficiency of Exhibit 110.  First, it held that Exhibit 110 does have decreasing radii of curvature.  This holding was based in part upon the district court's own examination of the mirror.  Second, the district court held that Rosco established public use because a

---

[1]     In Rosco I the district court held that Mirror Lite could not establish a date of invention earlier than the September 9, 1992, priority date of the '984 patent.  Rosco, Inc. v. Mirror Lite Co., 139 F. Supp. 2d 287, 303 (E.D.N.Y. 2001) ("Rosco I").  In light of our disposition we need not reach the question whether this holding was correct.

patent application filed by Rosco, a catalogue entry, and an advertisement all appeared before the priority date of the '984 patent and all depicted a mirror similar to Exhibit 110. Third, the district court held that appreciation is not an element of anticipation under 35 U.S.C. § 102(a), and, therefore, a lack of appreciation does not defeat a claim of anticipation.

IV

In Rosco I, the district court found no inequitable conduct. The basis for that finding was not explained in the court's opinion. We did not address that question in the first appeal. On remand, Rosco urged to the district court that Mirror Lite engaged in inequitable conduct while prosecuting the '984 patent by intentionally withholding material information from the examiner, or by making false statements to the examiner, regarding three separate issues. Rosco alleged that Mirror Lite had (1) withheld Rosco's oval mirror from the examiner; (2) falsely told the examiner that a prior art reference, U.S. Patent No. 4,436,372 (the "'372 patent"), had a constant radius of curvature and failed to provide the examiner with a sample of the '372 mirror; and (3) withheld an oval Mirror Lite mirror from the examiner. The district court rejected Rosco's first two allegations. It held that Schmidt, co-inventor of the '984 patent and co-owner and president of Mirror Lite, not only did not withhold Rosco's oval mirror from the examiner but affirmatively informed the examiner of the mirror's existence. The trial court further held that Schmidt's statements regarding the '372 patent were not false, did not evidence intent to deceive, and that Schmidt did not withhold a sample of the '372 mirror in an attempt to deceive the examiner.

However, the trial court agreed with Rosco regarding the third allegation. It held that Mirror Lite intended to mislead the examiner by failing to disclose Trial Exhibit EC ("Exhibit EC"), an oval Mirror Lite mirror that came into existence more than one year prior to the priority date of the '984 patent, and was therefore prior art. Specifically, the district court held that Exhibit EC was material because the examiner considered "the existence or nonexistence of oval mirrors in the prior art to be important." Rosco III, slip op. at 47. The district court further held that Schmidt intended to mislead the examiner because he was aware of the duty to disclose material prior art, but failed to do so.

The district court supported its determination regarding Schmidt's intent to mislead by pointing to Schmidt's trial testimony. In that testimony, the trial court found that Schmidt first testified that he disclosed no oval Mirror Lite mirrors because Mirror Lite had not sold any of its oval mirrors more than twelve months before the priority date of the '984 patent. When pressed regarding oval mirrors that Mirror Lite had sold for more than twelve months, Schmidt said that these mirrors were convex, rather than elliptical, and thus did not constitute prior art. The trial court found that Schmidt's distinction between convex and elliptical mirrors was not credible and was, therefore, pretextual and supported its finding of intent to mislead.

Based upon its holding that Mirror Lite engaged in inequitable conduct during prosecution of the '984 patent, the district court held the '984 patent unenforceable and found the case exceptional under 35 U.S.C. § 285. Accordingly, the district court awarded attorney's fees to Rosco.

V

Finally, Rosco urged that the remainder of the claims, numbers 4, 5, and 9, were obvious. The district court disagreed. In regard to claims 4 and 5, the district court found that Rosco failed to present evidence of the level of ordinary skill in the art, or of any motivation or suggestion to combine. It also found that the prosecution history did not support a finding of obviousness. In regard to claim 9, the district court found that Rosco presented insufficient evidence of motivation or suggestion to combine and that the prosecution history contained too little information to support a finding of obviousness.

Mirror Lite appeals the district court's holdings of invalidity, inequitable conduct, and attorney's fees.[2] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I

Anticipation is a question of fact. We review the district court's findings of anticipation for clear error. Hoover Group, Inc. v. Custom Metalcraft, Inc., 66 F.3d 299, 302 (Fed. Cir. 1995). "We review the district court's ultimate determination of inequitable conduct under an abuse of discretion standard." Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1379 (Fed. Cir. 2001). The district court's factual determinations regarding materiality and intent to mislead are reviewed by this court for clear error. Id. We review the district court's holding on the ultimate issue of

---

[2] The district court made a number of other holdings on remand. First, it held that Rosco failed to prove infringement of its U.S. Design Patent No. 346,357 (the "'357 patent") by Mirror Lite. Second, it held the '984 patent not invalid under 35 U.S.C. §§ 102(f). Third, it held that Rosco failed to prove its claim of tortuous interference with business relations against Mirror Lite. None of these holdings has been appealed.

obviousness de novo and its underlying findings of fact for clear error. <u>Dow Chem. Co. v. Mee Indus., Inc.</u>, 341 F.3d 1370, 1374 (Fed. Cir. 2003).

II

"Anticipation under § 102 requires 'the presence in a single prior art disclosure of all elements of a claimed invention arranged as in that claim.'" <u>Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.</u>, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (citations omitted). The '984 patent was held invalid under 35 U.S.C. § 102(a), which invalidates a patent if "the invention was known or used by others in this country . . . before the invention thereof by the applicant for patent." Although our case law has not assigned a precise meaning to "known or used by others," it is clear that the knowledge or use must be assessable to the public. <u>Woodland Trust v. Flowertree Nursery, Inc.</u>, 148 F.3d 1368, 1370 (Fed. Cir. 1998).

Invalidity must be proven by clear and convincing evidence. <u>Schumer v. Lab. Computer Sys., Inc.</u>, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Testimonial evidence of invalidity must be corroborated. <u>Finnigan Corp. v. Int'l Trade Comm'n</u>, 180 F.3d 1354, 1366-70 (Fed. Cir. 1999). The corroborating evidence may be documentary, physical, or circumstantial evidence, or the reliable oral testimony of someone other than the alleged inventor or an interested party. <u>Sandt</u>, 264 F.3d at 1350-51. We find that Rosco failed to prove by clear and convincing evidence that its alleged anticipating mirror disclosed every claim limitation of the '984 patent.

Rosco offered the testimony of Benjamin and Solomon Englander as evidence of the '984 patent's invalidity. Benjamin Englander is Solomon Englander's son, and both are part owners of Rosco. Solomon Englander testified that he designed a mirror

before the priority date of the '984 patent that shared many elements with the '984 patent. Benjamin Englander testified that during the same time he helped his father design a mirror containing every element of claims 1, 2, 3, 6, 7, and 8 of the '984 patent. Specifically, the testified that the mirror he helped design had a decreasing radius of curvature. He said that this feature was an unavoidable consequence of the process used to manufacture the lens used in the mirror. He also testified to having measured the radius of curvature of the lens of Exhibit 110, an example of the alleged prior art mirror, and that Exhibit 110 had a decreasing radius of curvature. He further testified that the mirror he helped design was sold to the public before the priority date of the '984 patent. As the district court apparently recognized, this testimony was insufficient to establish prior public knowledge or use of a mirror disclosing every claim limitation of claims 1, 2, 3, 6, 7, and 8 of the '984 patent without corroboration. The district court held that Exhibit 110 provided sufficient corroboration. We disagree. Rosco has not produced adequate evidence corroborating Benjamin Englander's testimony that Exhibit 110 had a decreasing radius of curvature.[3]

The trial court relied upon two pieces of evidence, other than Benjamin Englander's testimony, to find that Exhibit 110 did in fact disclose a decreasing radius of curvature: the testimony of Harvey Manbeck, Rosco's patent expert, that Benjamin Englander demonstrated to him Exhibit 110's decreasing radius of curvature using a

---

[3]     In light of this conclusion we need not address Mirror Lite's other contentions with respect to the sufficiency of Exhibit 110 as corroboration.

Rosco argues that many non-oval prior art mirrors possessed a decreasing radius of curvature. This is an obviousness argument, which will be discussed below. Rosco further agues that its '357 patent anticipates the Mirror Lite patent. However, as admitted by Rosco, the '357 patent does not disclose a mirror with a decreasing radius of curvature. Rosco III, slip op. at 11.

gauge, and the court's own physical and visual inspection of the mirror.  <u>Rosco III</u>, slip op. at 10 n.19.

None of the evidence relied upon by the trial court provided sufficient corroboration that Exhibit 110 has a decreasing radius of curvature.  Manbeck's testimony that Benjamin Englander demonstrated to him Exhibit 110's decreasing radius of curvature does not establish that Exhibit 110 indeed has a decreasing radius of curvature.  Manbeck's knowledge was dependent upon Benjamin Englander's representations to him, and Manbeck himself was not skilled in the mirror arts and made no independent judgment as to whether Exhibit 110 had a decreasing radius of curvature.  His testimony therefore does not corroborate the testimony of Benjamin Englander.  The court's own examination of Exhibit 110 was also insufficient.  The existence or nonexistence of a varying radius of curvature could only be determined by scientific measurement or visual inspection by one skilled in the art.  The district court was clearly not skilled in the art, and should not have assessed technical aspects of an exhibit on its own.  <u>See, e.g.</u>, <u>Dayco Prods, Inc. v. Total Containment, Inc.</u>, 329 F.3d 1358, 1369 (Fed. Cir. 2003); <u>Schumer</u>, 308 F.3d at 1316.  Rosco has thus failed to corroborate Benjamin Englander's testimony that its alleged anticipating mirror had a decreasing radius of curvature, and there was no basis for a finding of invalidity in the absence of such proof.

III

A strong showing is required to prove inequitable conduct.  Our case law holds that the "[m]ateriality of an undisclosed reference does not presume an intent to deceive."  <u>Halliburton Co. v. Schlumberger Tech. Corp.</u>, 925 F.2d 1435, 1442 (Fed. Cir.

1991).  Nor does gross negligence alone justify an inference of intent to deceive.  Id. Instead, "[a]n applicant's conduct in its entirety must 'manifest a sufficiently culpable state of mind to warrant a determination that it was inequitable.'"  Id. at 1443 (quoting Consol. Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 809 (Fed. Cir. 1990)) (internal alteration omitted).

As described above, the trial court considered three separate allegations of inequitable conduct.  It rejected two of these allegations, but found inequitable conduct as to Rosco's allegation that Mirror Lite intended to mislead the examiner by not disclosing Exhibit EC.  On appeal, Mirror Lite argues that it did not commit inequitable conduct with regard to Exhibit EC.  For its part, Rosco urges us to find inequitable conduct on all three bases alleged at trial.  However, Rosco has not shown the district court's decision regarding the two rejected bases to be clearly erroneous.  In contrast, the district court's finding of inequitable conduct in regard to Exhibit EC was clearly erroneous.

Under the circumstances of this case, the Exhibit EC is not so undisputedly material that intent can be inferred from materiality.  Therefore, there must other evidence supporting a finding of intent.  The district court found that Schmidt's explanation for failing to submit the EC mirror was pretextual because (1) Schmidt's distinction between convex and elliptical mirrors as turning on the constant radius feature was not supported in Mirror Lite's post-trial briefs and (2) in other patents in which Schmidt was named as inventor he used the term "convex ellipsoid," suggesting that the terms convex and ellipsoid were not mutually exclusive.  The first cannot be used to discredit Schmidt's testimony.  As for the second, Schmidt himself was clear

that the term convex could be used in two different senses, one as meaning simply a mirror that was not flat (i.e., one with an outward curve) and the other as requiring a constant radius of curvature. The fact that Schmidt used the term convex inconsistently (one way in the earlier patents and one way in his testimony) does not render his testimony deceptive, given his admission in the testimony that convex could have two different meanings. We conclude that the trial court's finding of deceptive testimony is clearly erroneous.

Schmidt testified at trial that Mirror Lite had sold oval elliptical mirrors before the priority date of the '984 patent. (J.A. at 632.) He further testified that he did not disclose these mirrors to the examiner because "[t]he product had not been on the market for more then twelve months." (Id. at 633.) When asked about oval interior mirrors Mirror Lite sold more than a year before the priority date of the '984 patent, Schmidt testified that in his view these mirrors were convex rather than elliptical because he they had a constant radius of curvature.

> [SCHMIDT]: Mirror Lite had sold an oval convex mirror prior to producing the oval elliptical mirror. The oval convex mirrors had been widely used in the industry for years.
> THE COURT: So that interior mirror, you are saying, wasn't an elliptical mirror?
> THE WITNESS: No, sir, convex mirror.
> THE COURT: Well, it was convex but it wasn't elliptical.
> THE WITNESS: With a constant rate of curvature, a two [sic] convex.

(Id. at 635.) Schmidt was later asked to explain his understanding of the word ellipsoid, and he testified that an ellipsoid does not have a constant radius of curvature, and that "in the industry" a convex mirror had a constant radius of curvature, though it could be used in a different sense.

[COUNSEL FOR ROSCO:] What does the word Ellipsoid mean to you?

[SCHMIDT:] Ellipsoid would be a three dimensional solid shape.

[COUNSEL FOR ROSCO:] To what extent can you describe what it applies with respect to radiuses of curvature?

[SCHMIDT:] Well, starting at the intersection of the minor and major axis, the mirror would be a non-uniform radius as it moved down the slopes, because at the end of the slope it would have to return to complete the Ellipsoid.

[COUNSEL FOR ROSCO:] If it was a constant radius of curvature, would it be an Ellipsoid?

[SCHMIDT:] No.

[COUNSEL FOR ROSCO:] What would it be?

[SCHMIDT:] Convex.

. . .

THE COURT: Excuse me. Are you saying that convex and Ellipsoid refer to two different things?

[SCHMIDT]: Well, yes and no. By definition a convex appears anything that is not flat, but a convex mirror in the industry would be one that if you measured the radius of curvature, it would be identical across the surface in all directions.

(Id. at 642-43.)

Schmidt's testimony was quite clear; there was no basis for finding it deceptive. The judgment of inequitable conduct is reversed. The award of attorney's fees is also reversed, there being no basis for the award absent a finding of inequitable conduct.

IV

The district court held that Rosco failed to prove claims 4, 5, and 9 obvious. Rosco does not appeal that holding, but it asserts that Rosco established at trial that the judgment of invalidity should be sustained because claims 1, 2, 3, 6, 7, and 8 were obvious. We hold that Rosco has submitted insufficient evidence to prove claim 1, 2, 3, 6, 7, or 8 of the '984 patent obvious.

Where obviousness is alleged to arise from a combination of elements across various references, proof of obviousness must include a suggestion, motivation, or

teaching to those skilled in the art to make the combination. <u>Iron Grip Barbell Co. v. USA Sports, Inc.</u>, No. 04-1149, slip. op. at 5 (Fed. Cir. Dec. 14, 2004). Here, Rosco alleged that various prior art oval mirrors with a constant radius of curvature in combination with any number of non-oval prior art mirrors having a decreasing radius of curvature renders claims 1, 2, 3, 6, 7, and 8 of the '984 patent obvious. (J.A. at 996-98, 1012.) However, Rosco pointed to no specific evidence of motivation to combine. In the absence of such evidence, Rosco has not carried its burden of establishing obviousness by clear and convincing evidence.

We have considered Rosco's other arguments and find them without merit.

## CONCLUSION

The decision of the district court is reversed and the case is remanded for further proceedings solely on the issue of infringement, the determination of which should be made on the existing trial record.

## COSTS

No costs.